**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cynthia Smyers,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-04321-PHX-JJT<br>**ORDER** |

At issue is the denial of Plaintiff Cynthia Smyers's Application for Social Security Income by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of the denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.), Defendant Social Security Administration Commissioner's Responsive Brief (Doc. 24, Resp.), and Plaintiff's Reply (Doc. 25). The Court has reviewed the briefs and Administrative Record (Doc. 18, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 2029–73) as upheld by the Appeals Council (R. at 2022–28). As set forth below, the Court remands for a calculation of benefits.

## I. BACKGROUND

Plaintiff's administrative journey has been a long one. She initially protectively applied for Disability Insurance Benefits (DIB) and Social Security Income (SSI) on January 28, 2013 alleging a disability with an onset date of January 1, 2011. (R. at 152.) After several hearings, both applications were denied. (R. at 149–69.) Plaintiff then filed

another DIB and SSI application on July 11, 2018, this time with an onset date of February 28, 2013. (R. at 2154.) After another few hearings, the application was denied by the ALJ, and upheld by the Appeals Council. (R. at 2151–81.) On appeal to the District Court, the parties stipulated to remand; Judge Campbell then ordered remand on August 8, 2022. (R. at 2194–95.) On May 2, 2023, the ALJ again denied both applications (R. at 2203–30), and the Appeals Council remanded for error (R. at 2231–2237). After yet another hearing—Plaintiff's sixth by the Court's count—the ALJ partially granted Plaintiff's application on March 7, 2025, finding her disabled from April 1, 2021 to the date of decision. (R. at 2029–73.) Plaintiff now appeals the denial of SSI benefits from July 11, 2018, the alleged onset date as amended, to March 31, 2021. (Pl. Br. 2, n.1.)

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the record, the ALJ found that Plaintiff had the following severe medically determinable impairments: lumbar spine degenerative disc disease, status post discectomy and revision discectomy, left radiculopathy, cervical and lumbar spondylosis, migraine headaches, fibromyalgia, obesity, mood disorder, bipolar disorder, personality disorder, and anxiety. (R. at 2037.) The ALJ further determined that the impairments did not meet or medically equal the severity required to consider her disabled (R. at 2037–41) and that Plaintiff's residual functional capacity (RFC) was sufficient to perform light work prior until April 1, 2023, at which point she could perform only sedentary work. (R. at 2041–56.) And yet, the ALJ concluded, there were no jobs in the national economy that Plaintiff could perform beginning on April 1, 2021. (R. at 2058.).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner on the fifth. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a), the twin regulation applying to DIB). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers if the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in rejecting Plaintiff's symptom testimony; and (2) the ALJ erred in rejecting Nurse Practitioner Stephen Pray's opinion without sufficient explanation of the supportability and consistency factors. (Pl. Br. at 1.) In view of these errors, Plaintiff asks the Court to apply the credit-as-true rule and to remand for a calculation of benefits. (Pl. Br. at 29.) Because the Court finds the first issue dispositive, it does not address the second issue.

### a. The ALJ erred in discrediting Plaintiff's symptom testimony.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Liegenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ erred in rejecting Plaintiff's symptom testimony on four bases. First, the ALJ cast doubt on the severity of Plaintiff's claimed pain from migraines because of her alleged failure to "follow her treating physician's recommendations." (R. at 2043–44, 2046–47.) Second, the ALJ found Plaintiff's reported daily life activities were "inconsistent with her complaints of disabling symptoms and limitations prior to April 1, 2021." (R. at 2048–49.) Third, the ALJ doubted Plaintiff's pain allegations given her

"treatment notes indicated that the claimant's pain medication regiment controlled her pain reasonably well." (R. at 2048.) And finally, the ALJ concluded there was "no reason to believe" Plaintiff's migraines occurred "prior to June 2021 or for any 12 month period." (R. at 2047.) The Court reviews each error in turn.

First, Plaintiff's claimed pain from migraines. The ALJ repeatedly noted that Plaintiff failed to "follow her treating physician's recommendations," supporting the inference that "her pain was not as severe as alleged." (R. at 2043–44, 2046–47.) As evidence, the ALJ pointed to a record indicating Plaintiff was "not taking Topamax as [the doctor] ordered." (R. at 856.) But the ALJ did not consider that in the same record, Plaintiff provided two different rationales for declining additional Topamax: (1) she mentioned her "pain management specialist told her that increased Topamax 250 mg will be too much" (R. at 856); and (2) that she "ha[d] the kidney stone and can not take higher dose of Topamax" (R. at 858). The ALJ did not explain how these comments impacted the credibility finding, nor that the consistency with which Plaintiff reported the kidney stone was supported across other treatment records. (*See, e.g.*, R. at 1289 (Plaintiff did not want to "increase Topamax [due to] kidney stones succeptibility [sic]").) The Court finds it at least equally likely Plaintiff refused to take the increased dose of Topamax for legitimate reasons, and not because she was misleading providers about her pain.

In another instance, the ALJ inferred Plaintiff's symptoms had improved from the fact she was "discharged from physical therapy because she did not follow up . . . ." (R. at 2046.) The record refutes the inference. Plaintiff appeared to have paused physical therapy because she was "going to have surgery," not due to improving symptoms. (R. at 896.) The Court presumes, generally speaking, one opts for surgery to relieve pain and fix ailments, not because pain is subsiding, as the ALJ would otherwise imply. Plaintiff's surgery claim is also supported by further evidence in the record, as it confirms she underwent two medical operations soon thereafter. (R. at 780–83.) After accounting for the records in

context, the Court finds no clear evidence that Plaintiff's symptom testimony should be discredited on grounds that she ignored or refused treatment.[1]

Second, the daily life activities. The ALJ found Plaintiff's reported daily life activities were "inconsistent with her complaints of disabling symptoms and limitations prior to April 1, 2021." (R. at 2049.) In particular, the ALJ repeated the finding that Plaintiff was "babysitting her four grandchildren while her daughter was at work." (R. at 2046, 2048, 2049, 2050.)) "Caring for young children can be quite demanding both physically and emotionally," and according to the ALJ, "the claimant's ability to do so, strongly suggests she was not as limited as alleged." (R. at 2046.) But this confuses what *can* be quite demanding for *must* be quite demanding, and there is no evidence in the record suggesting Plaintiff actually did engage in the physically and emotionally demanding aspects of babysitting. To the contrary, Plaintiff testified at hearing, "[my grandkids] want me to play with them and if I am in my walker I can't play with him . . . . and then I have to sit there and look at my grand kids and say, grandma can't do that. I am sorry. Grandma can't play. Grandma can't do this, grandma can't." (R. at 99.) The ALJ offered no explanation for believing Plaintiff was actively babysitting her grandkids, other than to cursorily conclude, "[Plaintiff] was able to babysit her four grandchildren . . . ." (R. at 2049.) The Court is unconvinced.

The ALJ also discounted Plaintiff's testimony because she was "able to pay bills," "watch[] television" (R. at 2049), and "shop[] in stores" (R. at 2049). Crucially, none of these findings suggest Plaintiff did the activities *without* pain or even with *tolerable* pain. Further, paying bills and watching television can obviously be supine activities, even if in extreme pain. As for grocery shopping, the ALJ did not consider that the records clarify it takes her two hours to complete (R. at 501); she also testified that such visits required help (R. at 145) and forced her to "hang on to the grocery cart . . . bent over, like [] the

[1] In a third instance, the ALJ found Plaintiff was not taking her medication (because she had failed a drug screen) (R. at 2043), but the doctor's notes in that record also state Plaintiff "does take these medications as expected."(R at 827.) The ALJ did not reconcile the conflict, and the Court finds it more likely Plaintiff did take her medications as prescribed, given the vast majority of other records confirm the finding. (*See, e.g.*, R. at 696, 721, 734, 737, 743, 746, 788, 802.)

Hunchback of Notre Dame" (R. at 135). The Court therefore does not find clear and convincing evidence that Plaintiff's reported daily life activities suffice to discredit her symptom testimony.[2]

Third, the treatment notes indicating controlled pain levels. The ALJ propounds that Plaintiff's pain medication regiment "controlled her pain reasonably well" and was "improv[ing] with treatment." (R. at 2048, citing B8F, B16F, B25F, B37F.) But again, nowhere does the record indicate Plaintiff reached *no* pain or even *tolerable* pain. "80% relief" is also vague, failing to specify duration, intensity, or frequency. (R. at 823.) For instance, if Plaintiff suffered 80% fewer migraines, but each remained supremely intense, her testimony could still be credible given that she described them akin to taking a "baseball bat to the back of the head" (R. at 56); if Plaintiff suffered 80% weaker migraines, her testimony could still be credible given she testified to suffering them two-to-five times a week (R. at 2097). Moreover, many of the ALJ's cited records actually support Plaintiff's claims regarding pain. For instance, the ALJ cites B25F, a record showing Plaintiff's migraines decreased from "daily" to "24 this month." (R. at 1543; *see also, e.g.*, R. at 1288 (reporting on a day of reasonably controlled pain, the pain scale was still "8/10").) Twenty-four migraines a month are simply not "controlled" migraines as the ALJ suggested. (R. at 2048.) Therefore, there is insufficient evidence to conclude that Plaintiff's testimony should be discredited on grounds that her pain was well managed.[3]

Finally, the ALJ summarily concluded there was "no reason to believe" Plaintiff's migraines occurred "prior to June 2021 or for any 12 month period." (R. at 2047.) To the extent the finding relates to Plaintiff's symptom testimony, the Court dismisses it outright. The finding is conclusory and "an ALJ may not reject a claimant's subjective complaints

---

[2] The Court notes only one record referenced by the ALJ squarely contradicting Plaintiff's symptom testimony. In the treatment note, Plaintiff reportedly said she "does get out and walk and bike for exercise. . . ." (R. at 1658.) But this sole record is insufficient to discount Plaintiff's credibility wholesale, and the Court is not aware of another reference to Plaintiff being able to exercise at all.

[3] The ALJ also references Plaintiff's refusal to contact a physician about a spinal cord simulator. (R. at 2045.) But nowhere in the cited record (B21F) is such treatment discussed, and therefore the Court finds no support for the determination.

based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. The ALJ's finding also ignores numerous reports of migraines in the preceding years. (*See, e.g.*, R. at 1793 (diagnosing a migraine in October 2019); R. at 1953 (noting migraines in August 2018); R. at 1398 (alleging migraines in September 2018); R. at 867 (noting migraines as of May 2018); R. at 566–58 (Plaintiff's migraine logs between March and May of 2021, reflecting weekly occurrences).)

**b. The credit-as-true rule applies.**

The credit-as-true standard, if applied here, would result in remand for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part standard is satisfied. *Id*. First, the record must have been fully developed, and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The credit-as-true rule applies in this case. First, the record in this case was fully and extensively developed, such that further proceedings would be unproductive. The record includes Plaintiff's six hearings before ALJs, thousands of pages of medical records, and multiple ALJ decisions. The parties also do not allege any deficiencies in the development of the record. Next, as discussed, the ALJ failed to provide legally clear and convincing reasons for rejecting Plaintiff's symptom testimony. Finally, if Plaintiff's symptom testimony were credited as true, then the ALJ would be required to find Plaintiff disabled. At hearing, the Vocational Expert (VE) opined that an individual, like Plaintiff, who was required to lay down for an hour or two, twice a week, would be unable to find work. (R. at 2118.) The VE also opined that an individual missing work two to three times per month would have "no work" available to them. (R. at 2110.) If properly credited, then considering the whole record, including the testimony of the VE, the ALJ would be required to find Plaintiff disabled.

Therefore, it is unnecessary to remand for further administrative proceedings, and the Court will remand for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the March 7, 2025 decision of the Administrative Law Judge, (R. at 2029–73), as upheld by the Appeals Council (R. at 2022–28).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 6th day of October, 2026.

Honorable John J. Tuchi
United States District Judge